Filed 8/19/22  In re N.B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re N.B., a Person Coming Under the Juvenile Court Law. | B319209 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ROGER B.,<br><br>     Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP04189A) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Conditionally affirmed and remanded with directions.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Father appeals from an order terminating his parental rights. On appeal, he contends the juvenile court erred in finding the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) did not apply. Father argues the Los Angeles County Department of Children and Family Services (DCFS) failed to conduct an adequate inquiry of extended relatives to determine whether N.B. is or may be an Indian child. We conditionally affirm the juvenile court's order and remand for further proceedings as to father's family.

## FACTUAL AND PROCEDURAL BACKGROUND

Father raises a limited issue on appeal. We therefore only briefly summarize the general background of this case. In August 2019, the juvenile court sustained a petition alleging N.B. and her two half-siblings were persons described by Welfare and Institutions Code section 300, subdivisions (a), (b), and (d),[1] as a result of domestic violence between mother and father, and due to father's history as a registered sex offender with a past criminal conviction for continuous sexual abuse of a child. Although N.B. and her siblings were initially released to mother, in November 2019, the juvenile court sustained a supplemental petition alleging the parents failed to abide by a restraining order requiring father to stay away from mother and the children except for court-ordered visitation. The court removed N.B. from

—————————

[1] All undesignated statutory references are to the Welfare and Institutions Code.

the parents and ordered reunification services for mother only. The court did not order reunification services for father pursuant to section 361.5, subdivision (b)(12) and (16). The court terminated mother's reunification services in April 2021.[2] N.B. and her siblings were living with a foster family that wished to adopt them. In March 2022, the juvenile court terminated parental rights.

### ICWA background

The initial dependency petition indicated the social worker questioned mother about Indian ancestry. Based on that questioning, the Indian Child Inquiry Attachment to the petition reported N.B. had no known Indian ancestry. Father was incarcerated at the time. The July 2019 detention report again indicated mother denied any Indian ancestry.[3] However, at the initial hearing, mother submitted a Parental Notification of Indian Status form (ICWA-020), declaring she is or may be a member of, or eligible for membership in, a federally recognized Indian tribe. Mother wrote on the form: "unsure of tribe." The juvenile court asked mother if there was any reason to believe father had American Indian heritage. Mother answered, "Yes,

---

[2] By November 2021, mother's whereabouts were unknown. DCFS noticed mother for the section 366.26 permanency planning hearing by publication.

[3] The detention report revealed the family was involved in a prior dependency case beginning in 2016. Neither the detention report nor any subsequent reports included information about ICWA findings or investigation in the prior case. However, mother's ICWA-020 form stated a previous form had been filed with the court.

but not a blood line.  There's no trace of it."  The court asked, "So you don't know of any?"  Mother answered, "no."  The court found the matter was not an ICWA case as to N.B.  The minute order reflected the detailed finding that the court had no reason to know N.B. was an Indian child and no notice to any tribe or the Bureau of Indian Affairs (BIA) was ordered.  The parents were to keep "[DCFS], their Attorney and the Court aware of any new information relating to possible ICWA status."

When father made his first appearance a few days later, he submitted an ICWA-020 form stating he may have Indian ancestry, writing on the form:  "Hopi my paternal grandmother."  The minute order from the proceeding reported the court found it did not have a reason to know N.B. is an Indian child, did not order notice to the BIA or any tribe, and again ordered the parents to keep DCFS, their counsel, and the court aware of any new information.  However, the order further stated:  "The court is informed that there may be some Hopi Native American/Indian heritage in the father's background.  [DCFS] is ordered to investigate said claim."

DCFS subsequently interviewed both parents about Indian heritage.  According to the jurisdiction and disposition report, mother told a social worker, "I know we have something but I wouldn't know the bloodline."  She referred the social worker to the maternal great-grandmother.  The maternal great-grandmother told the social worker her mother "had Native American blood but she doesn't know what tribe," and she had no additional information.

Father told the social worker he had Indian ancestry with the Hopi and "Tonga San Gabriel Mission" tribes, but "no one is enrolled or registered."  He indicated his aunt knew the family

4

history. Father also provided the names of his parents, the names of his four grandparents, and the names of one set of his great-grandparents. The social worker contacted father's mother, the paternal grandmother. The paternal grandmother told the social worker she gave the social workers in the prior dependency case information about the family and "HOPI Indian in Flagstaff, AZ." The social worker asked paternal grandmother to provide the information again and for the paternal aunt's contact information. According to the report, paternal grandmother provided the aunt's contact information a couple days later. The report indicated DCFS would follow up with contacting the aunt.

At the August 2019 jurisdiction and disposition hearing, the juvenile court made no further ICWA findings. In the October 2019 jurisdiction and disposition report, filed in advance of the hearing on the supplemental petition, DCFS reported it had contacted extended relatives for additional information about father's Indian ancestry and "is pending complete information to be able to send out the ICWA notices." At the November 15, 2019 disposition hearing, the court found ICWA did not apply.

All subsequent reports indicated only that ICWA did not apply. The record does not reflect that DCFS or the juvenile court conducted any further ICWA-related inquiry or investigation.

## DISCUSSION

On appeal, father raises only a single issue: he contends DCFS and the juvenile court failed to conduct a proper inquiry as to whether N.B. is or may be an Indian child. DCFS contends substantial evidence supports the juvenile court's finding that ICWA does not apply in this case and any error in failing to interview extended family members was harmless. We agree

5

that substantial evidence supported the juvenile court's finding with respect to mother's side of the family. As to father's side of the family we conclude remand is necessary for further proceedings.

## I.     Duty of inquiry

"ICWA was enacted ' "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ." [Citation.]' (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 . . . ; see 25 U.S.C. § 1902.)" (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078.)

Section 224.2 sets forth the duties of a county welfare department and the juvenile court in determining whether a child is or may be an Indian child. An " "Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Section 224.2, subdivision (a), provides that both the court and the child welfare agency have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child, beginning with the "initial contact," which includes asking the party reporting abuse or neglect if they have any information that the child may be an Indian child.

Under section 224.2, subdivision (b), if a child is placed in the agency's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family

6

members.  Under section 224.2, subdivision (c), at the first court appearance of each party, the juvenile court must ask whether the appearing party knows or has reason to know that the child is an Indian child.  In addition, the court must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.

Under section 224.2, subdivision (e), if the court or social worker has reason to believe an Indian child is involved in the proceeding, but does not have enough information to determine there is a reason to know the child is an Indian child, the court or the social worker must make further inquiry, as soon as practicable.  "[R]eason to believe" means the court or social worker has information "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)

"Further inquiry" includes actions such as "[i]nterviewing the parents, Indian custodian, and extended family members" to gather information that would be necessary to provide notice to any relevant tribes.  (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).)  It also includes contacting the BIA and State Department of Social Services for assistance in identifying contact information of relevant tribes, and contacting the "tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e)(2)(B)-(C).)

There is "reason to know" a child is an Indian child when: a person having an interest in the child informs the court the child is an Indian child; the residence of the child, the child's parents, or the child's Indian custodian, is on a reservation or in an Alaskan Native village; a participant in the proceeding, officer

7

of the court, Indian tribe or organization, or agency informs the court it has discovered information indicating the child is an Indian child; the child gives the court reason to know that the child is an Indian child; the court is informed that the child is or has been a ward of a tribal court; or the court is informed either the parent or the child possesses an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

## II. Inquiry of mother and mother's relatives

In this case, mother indicated a belief that she may have some Indian ancestry, but candidly told DCFS she could not identify heritage with any specific tribe. She believed the maternal great-grandmother was the person who might have more information. Consistent with section 224.2, subdivision (b), DCFS then interviewed the maternal great-grandmother, who informed a social worker that *her* mother had "Native American

8

blood," but she had no information about a relationship or heritage with any specific tribe. The maternal great-grandmother had no further information. Thus, DCFS inquired of the extended relative mother identified as the person who would have knowledge of mother's Indian ancestry, if any. The information mother and the maternal great-grandmother provided did not give rise to a further "reason to believe" or "reason to know" N.B. is or may be an Indian child. (*In re T.G.* (2020) 58 Cal.App.5th 275, 294 ["[a]n 'Indian child' is defined in terms of tribal membership, not ancestry"].)

The record contains no information suggesting mother and the maternal great-grandmother were not credible with respect to their knowledge of the extent of mother's Indian ancestry, or that they lacked information other family members might possess. (Cf. *In re Y.W.* (2021) 70 Cal.App.5th 542, 548 [mother was adopted and had no information about biological relatives]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 [father never appeared, and mother had no reason to know father's ancestry].) We conclude substantial evidence supported the juvenile court's implied finding that DCFS exercised due diligence in investigating mother's side of the family and the ultimate finding that ICWA did not apply as to mother's lineage.

Moreover, even if DCFS erred in failing to interview additional maternal extended relatives, we would find any error harmless, under the standard of prejudice as explained in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*). We agree with the *Dezi C.* court that the proper application of our state's test for harmless error in this context is that "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains

9

information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Id.* at p. 779.)

This approach "effectuates the rights of the tribes in those instances in which those rights are most likely at risk, which are precisely the cases in which the tribe's potential rights do justify placing the children in a further period of limbo. The 'reason to believe' rule also removes the incentive to use ICWA as a thirteenth-hour delay tactic and, by allowing parents to cite their proffers on appeal as well as the juvenile court record, still sends a 'message' to agencies that ICWA's mandates are not to be ignored because remand will be ordered in any case where there is reason to believe the failure to inquire mattered."[4] (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 782.)

---

[4] We reject the automatic reversal rule adopted by some courts. (See, e.g., *In re H.V.* (2022) 75 Cal.App.5th 433, 438; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556.) We agree with the courts and others who have concluded the automatic reversal approach fails to acknowledge or reconcile the requirements of ICWA and section 224.2 with the California Constitution's mandate that a judgment may not be set aside unless it has resulted in a miscarriage of justice. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1020 (conc. & dis. opn. of Crandall, J.).) The automatic reversal approach also requires the court to conclude parents' reports of their own Indian heritage cannot be trusted, irrespective of whether there are circumstances warranting such distrust. (*Dezi C.*, at p. 784; *In re Ezequiel G.* (July 29, 2022, B314432) ___ Cal.App.5th ___ [2022

While father contends DCFS failed to make an inquiry of a maternal aunt who appeared at one hearing and wanted to discuss placement of the children, there is no indication in the record that this relative—mother's sister—had information different or additional to that provided by the maternal great-grandmother relevant to whether N.B. is or may be an Indian child.[5] (*In re Darian R.* (2022) 75 Cal.App.5th 502, 510 [parents and paternal aunt denied Indian ancestry; record did not support "unvarnished contention" additional interviews of maternal grandfather and aunt would have "meaningfully elucidated the children's Indian ancestry"].) Father has made no proffer on appeal or representation that additional inquiry may have led to the revelation of any information suggesting a reason to believe N.B. is or may be an Indian child through mother's lineage.

## III. Inquiry of father and father's relatives

In contrast, father indicated at his initial appearance that he had Indian ancestry related to at least one federally recognized tribe.[6] Although he reported that no one in the family

---

Cal.App. Lexis 671, *33] [because tribal membership typically requires affirmative act by parent, parent often will be reliable source of information].)

[5] Father does not identify any other maternal relatives DCFS failed to ask to determine whether N.B. is or may be an Indian child.

[6] ICWA applies only to federally recognized tribes. (*In re K.P.* (2009) 175 Cal.App.4th 1, 6 [ICWA does not cover an allegation of membership in a tribe not recognized by federal government].) "25 Code of Federal Regulations section 83.6(b) requires the Secretary of the Interior to publish in the Federal

was registered or enrolled in the tribe, that by itself was not an indication that N.B. is not a member or is ineligible for membership in the tribe. (See § 224.2, subd. (h) ["Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 316–317.) The paternal grandmother confirmed she also believed father has Hopi ancestry and agreed to provide additional information to the social worker. Father identified a particular relative he believed has the most reliable information—a paternal great-aunt—and paternal grandmother provided the aunt's contact information. Later reports suggested DCFS intended to send ICWA notices. The lack of further information, or proof that ICWA notices were sent, is unexplained.

On this record, there is "reason to believe" N.B. may be an Indian child through father's lineage and there was a need for further inquiry. (*In re M.E.* (2022) 79 Cal.App.5th 73, 81–82 [further inquiry required where both parents claimed Indian ancestry]; *In re Michael V.* (2016) 3 Cal.App.5th 225, 235 [further

---

Register a list of all Indian tribes which are recognized and receiving services from the [BIA], and to update and publish that list annually." (*In re Wanomi P.* (1989) 216 Cal.App.3d 156, 166–167.) The second tribe father named is not identified on the current list, or on the list that was current in 2019. (Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 87 Fed.Reg. 4636 (Jan. 28, 2022) [current list]; *id.* 84 Fed.Reg. 1200 (Feb. 1, 2019) [2019 list].)

inquiry required where mother suggested maternal grandmother was member of two Indian tribes].)  The record indicates DCFS conducted further inquiry but then falls silent as to the results.  Without further reporting, the juvenile court did not have sufficient evidence to find DCFS conducted "proper and . . . further inquiry" or exercised the "due diligence" required by section 224.2.  (§ 224.2, subd. (i)(2); see *In re N.G.* (2018) 27 Cal.App.5th 474, 484–485 [deficient record showing compliance with ICWA notice requirements mandates reversal].)  Substantial evidence did not support the juvenile court's finding that ICWA does not apply.

We cannot find the error harmless.  Father and paternal grandmother reported the family has Indian ancestry with a specific tribe and the record suggests DCFS obtained information leading it to believe notice to a tribe was necessary.  (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779 [failure to conduct proper initial inquiry may be prejudicial if agency did not follow up on report of possible Indian heritage].)

We therefore conditionally affirm the juvenile court order, remanding the matter for further inquiry and compliance with ICWA.

13

**DISPOSITION**

The juvenile court's order terminating parental rights is conditionally affirmed. The case is remanded to the juvenile court to order DCFS to immediately comply with the inquiry provisions of Welfare and Institutions Code section 224.2 as to available paternal relatives. After ensuring DCFS has complied with the inquiry, and, if applicable, notice provisions of ICWA and related California law, the juvenile court shall determine whether ICWA applies. If the court determines ICWA does not apply, the order terminating parental rights shall remain in effect. If the court determines ICWA does apply, it shall vacate its order terminating parental rights and proceed consistent with ICWA and related state law.

NOT TO BE PUBLISHED.


ADAMS, J.*


I concur:


EGERTON, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

LAVIN, J., Concurring:

I concur in the judgment. I write separately to clarify that I disagree with the harmless error analysis in *In re Dezi C.* (2022) 79 Cal.App.5th 769.




                                    LAVIN, Acting P. J.